466 So.2d 1343 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Randy C. SMITH, Defendant-Appellant.
No. CR84-501.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
*1346 Tony C. Tillman, Tillman & Fontenot, Leesville, for defendant-appellant.
William E. Tilley, Dist. Atty., Leesville, for plaintiff-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
Defendant, Randy C. Smith, was charged by a bill of information for the crime of armed robbery in violation of LSA-R.S. 14:64. On January 9, 1984, jury selection began for the defendant's trial. On January 11, 1984, a twelve member jury found the defendant guilty as charged. The verdict was unanimous. On February 9, 1984, the defendant filed a motion for new trial which was denied without a hearing by the Honorable Roy B. Tuck. On March 28, 1984, the defendant was sentenced to serve 15 years at hard labor in the custody of the Louisiana Department of Corrections, without benefit of parole, probation or suspension of sentence. Defendant appeals urging seventeen assignments of error. We find all the assignments of error are without merit and, therefore, we affirm.

FACTS
On September 12, 1983, the defendant, a soldier stationed at Fort Polk, Louisiana, was arrested on suspicion of committing an armed robbery. The defendant was explained his Miranda rights and he then executed a voluntary written waiver of his rights. After signing the waiver he gave an oral (taped) statement indicating his participation in the armed robbery. Thereafter, he signed a typewritten statement containing substantially the same thing as the taped statement.
At trial, it was established by the testimony of several witnesses that in the early evening hours of September 8, 1983, Smith and two of his soldier friends, Dale Blankenship and Scott Mason, went to a local bar in Vernon Parish known as "Ellen's Place." A juvenile named Clyde Doerr, Jr., who was then residing at Blankenship's house trailer because he had run away from home, drove the trio in Blankenship's car to the bar, dropped them off, and returned to Blankenship's trailer. While at the bar, the trio met two other soldiers named William Gilpin and Tony Young. Gilpin and Young had caught the Liberty Bus from Fort Polk to Ellen's Place. Gilpin, on crutches for having broken his ankle earlier that summer, was carrying a large sum of money (approximately $400.00) because of his recent receipt of wages from the army.
The soldiers drank beer and played pool until closing time at Ellen's Place. In the early morning hours of September 9, 1983, Smith and Blankenship became aware that Gilpin was carrying a large amount of cash and, at that time, made plans to rob him and Young. At approximately 1:00 a.m., Doerr returned to pick up Smith, Blankenship and Mason. Upon Gilpin's request, Blankenship agreed to give Gilpin and Young a ride back to Fort Polk. Blankenship drove, Smith and Mason rode in the front seat, and Gilpin, Young and Doerr rode in the back seat. Mason, refusing to take part in the robbery, was then dropped off at North Fort Polk.
About ten minutes after Mason was dropped off, Young asked Blankenship to stop the car on a dirt road to enable him to relieve himself. It was at this time the robbery occurred. As Young crawled out of the back seat of the automobile, Blankenship got out of the car and began striking Young on the head with a tire iron. Young then ran from the scene. Blankenship and Smith then began to beat Gilpin with the tire iron and one of Gilpin's *1347 crutches. They robbed him and fled the scene.
Defendant brings this appeal, asserting the following assignments of error:
1. The trial court erred in denying the challenge for cause of prospective juror Annette Kinchen.
2. The trial court erred in denying the challenge for cause of prospective juror Samuel W. Matthis.
3. The trial court erred in denying the challenge for cause of prospective juror Doris Maddox.
4. The trial court erred in admitting testimony by Tony Young of his injuries.
5. The trial court erred in allowing Tony Young to testify as to numerous hearsay statements.[1]
6. The trial court erred in allowing Scott Mason to testify as to statements made by other persons to him.
7. The trial court erred in admitting statements made by the defendant Randy C. Smith to Scott Mason, which statements the State did not disclose in response to discovery motions filed by defendant.
8. The trial court erred in admitting statements made by the defendant Randy C. Smith to Scott Mason after the alleged commission of the crime.
9. The trial court erred in allowing Scott Mason to testify as to statements allegedly made by defendant, Randy C. Smith, under circumstances such that the issue of the credibility of the defendant versus the witness were placed at issue before the jury, in violation of the defendant's Fifth Amendment rights.
10. The trial court erred in allowing E.L. Willis to testify about the emotional state of Tony Young.
11. The trial court erred in allowing Clyde Doerr to testify as to statements allegedly made by the defendant, Randy C. Smith.
12. The trial court erred in allowing Clyde Doerr to testify as to statements made by William Gilpen.
13. The trial court erred by allowing into evidence photographs marked 10-1 and 10-2.
14. The trial court erred in allowing into evidence a taped statement made by defendant.
15. The trial court erred in that there was not sufficient evidence upon which to base a conviction under the dictates of Jackson v. Virginia, as interpreted by the courts of this State.
16. The trial court erred in failing to grant a new trial in that there was a prejudicial error or defect in the proceedings in that Act No. 533 of 1983, created an additional crime to be included in LSA-R.S. 14:64.1, to define the crime of first degree robbery; however the legislature neglected to amend LSA-C.Cr.P. art. 814, subd. A(22), to include first degree robbery as a responsive verdict to armed robbery, thereby depriving the jury of an opportunity to find the defendant guilty of an offense which is a lesser and included offense of the charge armed robbery.
17. The trial court erred in failing to grant a new trial based on the prejudicial error of the court in allowing Scott Mason and Clyde Doerr to testify as to hearsay statements, and that such statements were clearly prejudicial to the defendant.

ASSIGNMENTS OF ERROR NOS. 1, 2, and 3
Defendant contends that the trial court erred in denying the challenge for cause of prospective jurors Annette Kinchen, Samuel Matthis, and Doris Maddox.
*1348 LSA-C.Cr.P. art. 797 provides, in part, that the State or the defendant may challenge a juror for cause on the ground that:
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;"
The defendant need only show two things to obtain reversible error: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant, and (2) that the defendant exhausted all of his peremptory challenges. LSA-C.Cr.P. art. 800, comment (a) (West 1981 & Supp.1985); State v. Albert, 414 So.2d 680, 682 (La. 1982); State v. Monroe, 366 So.2d 1345, 1347 (La.1978). The record reflects that the defendant exhausted all of his peremptory challenges.
A trial court is vested with broad discretion in ruling on a challenge for cause and that ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Gintz, 438 So.2d 1230, 1234 (La.App. 3d Cir.1983); State v. Bates, 397 So.2d 1331, 1334 (La.1981). A review of the entire voir dire is essential to determine if the trial court's discretion has been arbitrary or unreasonable and resulted in prejudice to the accused.[2]Id.
In regard to the prospective jurors of this case, the record indicates that the defendant issued a challenge for cause, that such was denied by the trial court and, for that reason, it was necessary to have them excused by the exercise of a peremptory challenge.
Ms. Kinchen testified during voir dire that her husband was employed as a state trooper with the Louisiana State Police, Troop H, in Leesville, Louisiana for the entire nine years of their marriage. The defendant argues that it would be unreasonable to believe that her relationship to her husband, an active member of the Louisiana State Police, would not influence her in any manner so far as the credibility to be attributed to a law enforcement officer's testimony, or that she would not be influenced or biased toward the prosecution or the State.
Similarly, Ms. Maddox testified that she has one brother-in-law who is employed as a captain with the Louisiana Department of Wildlife and Fisheries and another brother-in-law who is employed as a state trooper with the Louisiana State Police. Both of Ms. Maddox's relatives serve the area of Vernon Parish, Louisiana. The defendant argues, as with Ms. Kinchen, that the relationship between Ms. Maddox and the law enforcement officers would certainly influence her in favor of the prosecution or State and would thereby preclude her from being an impartial juror.
It is well-settled that a mere relationship of a prospective juror to a law enforcement officer is not in itself a ground for excusal for cause. State v. Smith, 430 So.2d 31, 38 (La.1983). The question is whether the juror can assess the credibility of each witness independent of the occupation of the witness. Id. Such determinations are within the discretion of the trial judge and will not be overturned absent an abuse of that discretion. Id.
Both Ms. Kinchen and Ms. Maddox testified on voir dire that their relationship with law enforcement officers would not tend to make them believe the word of a law enforcement officer over that of another citizen, nor would it tend to influence, *1349 bias or prejudice their decision in favor of the prosecution or the State. Based on a review of the entire transcript of the voir dire examinations of Ms. Kinchen and Ms. Maddox, the trial judge did not abuse his discretion in denying the defendant's challenge for cause of these prospective jurors. Consequently, assignments of error nos. 1 and 3 lack merit.
Finally, the record reflects that Mr. Matthis was employed as a corrections officer with the Department of Corrections, L.C.I.S., in DeQuincy, Louisiana. Defendant argues that Mr. Matthis was employed in a capacity as a law enforcement officer and, as such, he could not be considered to be an impartial juror. The defendant points out that criminal jury service by a person who is associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause. State v. Chapman, 410 So.2d 689, 697 (La.1981), aff'd on rehearing, 410 So.2d 710 (La. 1982); State v. Sylvester, 400 So.2d 640, 643 (La.1981). The defendant further argues that these cases do not state that the person must literally be a deputy sheriff or a member of the state police; the concern is that one who is "associated with" law enforcement duties must be carefully scrutinized.
Mr. Matthis testified at the voir dire examination that he was not a law enforcement officer, and that he had never made an arrest or testified in court. Mr. Matthis testified that he was trained by the Department of Corrections, not the state police, and that his duties were essentially that of a security guard. Mr. Matthis further testified that his employment relationship would have absolutely no bearing upon his ability to act as a fair and impartial juror.
At first glance, this assignment of error appears to merit consideration; however, upon review of the entire transcript of the voir dire examination it cannot be said that the trial judge abused the broad discretion granted to him with resultant prejudice to the defendant. The record shows that the trial judge closely scrutinized the challenge of Mr. Matthis and determined that his relationship with the State of Louisiana would have no bearing on his ability to remain impartial. Consequently, this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial court erred in admitting testimony by Tony Young of the injuries he received during the commission of the robbery.
The testimony objected to by the defendant is as follows:
"Q. Describe the medical injuries that you recinjuries that you received?
A. My head was busted open, I received about seven to nine stitches and my fingernail was total busted, it grew a new one back by now, it was busted off, all of this.
Q. Where on your head were you hit when you started to get out of the car?
A. Right here, (demonstrated), as soon as I pulled my head outside the door to get out the car I was struck.
Q. All right. If you will, turn your head towards the jury and point to where you were hit on the head and where you received injuries."
Record, p. 92 and 93.
The defendant argues that this testimony is irrelevant and lacks probative value, because the defendant did not cause those injuries and the questions were not responsive to the defendant's trial on the charge of armed robbery of William Gilpin. Furthermore, the defendant argues that this testimony is inadmissible as evidence of another crime. On the other hand, the State argues that this testimony was admissible as res gestae of the armed robbery.
LSA-R.S. 15:441 defines relevant evidence as "that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent." The defendant argues that the information describing the *1350 wounds received by Mr. Young do not tend to show the commission of an armed robbery of William Gilpin, nor does it tend to show the intent of the defendant since the wounds and injuries suffered by Mr. Young were caused by Mr. Blankenship.
The record reflects that prior to the commission of the armed robbery, the defendant and Mr. Blankenship began passing a tire iron between themselves while riding in the front seat of Mr. Blankenship's automobile. As soon as the automobile was stopped and Mr. Young began to exit the rear seat of the vehicle, he was struck several times in the head with a tire iron wielded by Mr. Blankenship.
The testimony of Mr. Young is relevant evidence as it tends to show the commission of the offense. Here, the defendant was tried on the charge of armed robbery of Mr. Gilpin and a necessary element of proof on that charge is the use of a deadly weapon. There can be no doubt that a tire iron, in the manner used by Mr. Blankenship, is a deadly weapon. Thus, the testimony of Mr. Young is relevant to prove that the defendant and his accomplice were, in fact, armed with a deadly weapon.
The defendant has further argued this testimony to be inadmissible as evidence of another crime.[3]
The defendant cites State v. Prieur, 277 So.2d 126 (La.1973), for the proposition that evidence of other crimes is generally inadmissible as the prejudicial effect of admission generally outweighs its probative value. However, the defendant overlooks the fact that evidence of criminal acts which are part of the res gestae are always admissible. LSA-R.S. 15:447.
As provided by LSA-R.S. 15:448, "To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." In this case, the circumstances under which the defendant and his accomplice planned to use the tire iron as a weapon in the robbery of Mr. Young and Mr. Gilpin, including all the events leading up to the actual robbery of Mr. Gilpin, are clearly part of the res gestae. Mr. Young's escape does not defeat the fact that the beating of Mr. Young formed, in conjunction with the robbery of Mr. Gilpin, one continuous transaction. Consequently, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 6, 7, 8 and 9
Defendant contends that the trial court erred by allowing Scott Mason to testify as to statements made before and after the commission of the armed robbery by defendant to Mr. Mason, and by admitting these statements which were not disclosed by the State in response to discovery motions filed by the defendant.
As to the statements made before the commission of the armed robbery, Mr. Mason testified that the defendant told him, just prior to leaving Ellen's Place, that he and Mr. Blankenship were going to "take these two guys out for a ride for their money," Record p. 177, and defendant asked Mason if he wished to participate. The defendant objected to this testimony as inadmissible hearsay, while the State argued its admissibility as part of the res gestae. As noted by the Louisiana Supreme Court in State v. Sharp, 414 So.2d 752, 753 (La.1982), "[i]f a statement constitutes hearsay, but forms part of the res gestae, it is admissible into evidence." That Court further pointed out in State v. Billiot, 421 So.2d 864, 867 (La.1982), that "[t]he doctrine of res gestae includes not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances."
Under the circumstances in this case, the statements made by the defendant to Mr. Mason immediately prior to the *1351 commission of the offense forms, in conjunction with the subsequent armed robbery of Mr. Gilpin, one continuous transaction. Consequently, assignment of error number 6 is without merit.
As to the statements made after the commission of the armed robbery, Mr. Mason testified that during a conversation the day after the armed robbery, defendant told him that defendant took the victims on a ride for their money and that he stole over $300.00 from them and that defendant was worried because he left his hat and tire iron at the scene. Defendant objected to this testimony as inadmissible hearsay. Defendant argues, citing State v. Huizar, 414 So.2d 741 (La.1982), that those statements cannot be considered part of the res gestae because the conversation that occurred the day following the crime was a narrative declaration, not a spontaneous statement by defendant in accordance with LSA-R.S. 15:447.
"Res gestae [as exceptions to the hearsay rule] are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
LSA-R.S. 15:447.
As stated by the Louisiana Supreme Court in State v. Williams, 331 So.2d 467 (La.1976),
"res gestae includes spontaneous words or acts of the participants at the time of the occurrence, but `not the words of the participants when narrating the events.' As early recognized, the res gestae exception permits admission of events speaking thru participants, but not the testimony of participants speaking about events."
Id. at 470 (citation omitted). "Narrative declarations are not considered to be part of the res gestae." State v. Huizar, 414 So.2d at 748. In the present case, defendant's statements to Mr. Mason on the day after the crime were not properly admissible under the res gestae exception to the hearsay rule. The declarations made by defendant were not necessary incidents of the criminal act or immediate concomitants of it, nor did they form, in conjunction with the armed robbery, one continuous transaction. La.R.S. 15:448.[4]
However, the statements are admissible either as nonhearsay or as an admission. In Huizar, 414 So.2d at 749, the Louisiana Supreme Court noted that evidence is not hearsay when it is offered only to show that it occurred or that a conversation took place. Mr. Mason's testimony as to what the defendant told him the day after the crime therefore is admissible as nonassertive testimony to prove that the conversation occurred. In State v. Lewis, 416 So.2d 921, 924 (La.1982), the Louisiana Supreme Court found that hearsay testimony relating to an admission by the defendant is admissible under a widely recognized exception to the hearsay rule. See La.R.S. 15:449 et seq. The statements made by the defendant to Mr. Mason were admissions which fall under that exception. Consequently, based on either rule of law, assignment of error number 8 lacks merit.
The defendant also contends that by admitting these statements, which were not disclosed by the State in response to discovery motions filed by the defendant, the trial court committed error.
La.C.Cr.P. art. 716 outlines the rules for discovery of statements by the defendant as follows:
"A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, *1352 control, or knowledge of the district attorney.
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer."
As an exception to those rules, it should be noted that the State is not required to give notice to defendant of its intent to introduce res gestae statements. State v. Belgard, 410 So.2d 720, 723 (La. 1982). Thus, as to the statements made by the defendant to Mr. Mason prior to the armed robbery, the State was not required to give notice to the defendant of its intention to introduce them.
As to the statements made by the defendant to Mr. Mason subsequent to the armed robbery, the res gestae exception does not apply. The resulting issue is whether or not the notice of intent filed by the State on the date trial commenced was sufficient to provide adequate disclosure. LSA-C.Cr.P. art. 729.3 provides a continuing duty of disclosure upon the parties as follows:
"If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection."
The record reflects that on October 20, 1983, the defendant filed a motion for bill of particulars, discovery and production. On December 6, 1983, Mr. Mason was subpoenaed by the State. Defendant's motion for discovery was answered by the State on December 12, 1983, but it did not include Mr. Mason as a possible witness to a statement made by the defendant. However, on January 9, 1984, the date trial commenced, the State filed a notice of intent, in accordance with LSA-C.Cr.P. art. 768, including Mr. Mason as a potential witness to an oral statement made by the defendant.
Defendant argues that the notice of intent filed by the State on the trial date was insufficient to provide adequate notice of disclosure and was violative of LSA-C. Cr.P. arts. 716 and 729.3. Defendant further argues that such failure by the State to comply with discovery orders subjected him to undue prejudice and unfair surprise constituting reversible error.
The purpose of discovery rules is to eliminate unwarranted prejudice, to avoid surprise evidence, and to allow the defense adequate time for preparation. State v. Billiot, 421 So.2d 864, 867 (La. 1982). However, the failure of the State to comply with discovery procedures does not automatically require reversal. State v. Vaccaro, 411 So.2d 415, 427 (La.1982). This court shall examine the circumstances to determine whether the defendant was actually prejudiced by the nondisclosure.
The record reflects that after the defendant objected to the introduction of the statements into evidence, the trial court removed the jury and allowed both the defendant and the State to argue the objection fully. During these arguments, the defendant requested and was granted a short recess to consider the evidence and prepare for it. The trial court further indicated that it would allow the defendant additional time if necessary. The record further reflects that the defendant made voluntary confessions, in typewritten and *1353 tape recording form, confessing to the crime and admitting prior discussions and plans to rob Mr. Young and Mr. Gilpin of their money.
After reviewing the record, we conclude that defendant was neither unfairly surprised nor prejudiced in any manner. Consequently, assignment of error number 7 is without merit.
Defendant further contends that the trial court erred in allowing Mr. Mason to testify as to statements made by the defendant, in violation of the defendant's Fifth Amendment rights. Mr. Mason was a fellow soldier and acquaintance of the defendant. He is not a law enforcement officer, nor is he connected with the State in any similar capacity. The protection afforded by the Fifth Amendment, specifically the privilege against self-incrimination, does not apply to statements, admissions, or declarations made by the defendant to a third party. Consequently, assignment of error number 9 lacks merit.

ASSIGNMENTS OF ERROR NOS. 10, 11, and 12
Defendant contends that the trial court erred in allowing E.L. Willis to testify about the physical and emotional state of Tony Young. After Mr. Young was hit by Mr. Blankenship, he fled the scene of the crime and went to the residence of Mr. Willis to seek help. At trial, Mr. Willis testified as to the physical and emotional appearance of Mr. Young. Defendant objected to the introduction of this evidence and argued that such testimony was irrelevant to the charge of armed robbery and related to evidence of another crime, that being the battery of Mr. Young, a crime for which the defendant was not on trial.
Likewise, the defendant contends that the trial court erred in allowing Clyde Doerr to testify as to statements made by the defendant and by William Gilpin. Mr. Doerr was a nonparticipating passenger who observed the crime. At trial, Mr. Doerr testified as to various statements made by both the defendant and the victim. The defendant's main objection to the introduction of these statements was inadmissible hearsay.
In regard to the testimony of Mr. Willis, the description of the physical and emotional state of Mr. Young is relevant and corroborative of the testimony of Mr. Young. In the charge of armed robbery, a material issue is whether or not a dangerous weapon was used in its commission. The testimony of Mr. Willis regarding the fact that Mr. Young sustained serious injuries to his head is relevant to prove the use of a deadly weapon: a material issue in a charge of armed robbery. LSA-R.S. 15:435; LSA-R.S. 15:441.
Mr. Doerr's testimony concerns statements made by the defendant to him just prior to the crime and statements, excited utterances, and exclamations made by Mr. Gilpin while he was being beaten and robbed. All of these statements, excited utterances, and exclamations were made during the res gestae of the armed robbery. Statements which form any part of the res gestae are always admissible into evidence. LSA-R.S. 15:447; LSA-R.S. 15:448. Consequently, these assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends that the trial court erred by allowing into evidence photographs of the wounds inflicted on Mr. Gilpin's head, marked State Exhibit 10-1, and of the wounds inflicted on Mr. Young's head, marked State Exhibit 10-2. Defendant objected to the introduction of the photographs on the grounds of relevancy arguing that the photographs had no probative value in the trial of armed robbery in that they did not tend to prove or disprove any fact of issue in the trial of the defendant on the charge of armed robbery of Mr. Gilpin.
"Photographs which illustrate any fact, shed light upon any factor at issue in the case, or reliably describe the person place or thing depicted are admissible provided their probative value outweighs any prejudicial effect." State v. Burdgess, 434 So.2d 1062, 1066 (La.1983). The introduction *1354 of the photographs of the victims' heads tends to corroborate their testimony, depict their wounds, identify the victims, and illustrate the use of force upon the victims. After reviewing the record, we find that the probative value of these photographs outweigh any prejudicial effect experienced by the jury upon viewing them. Consequently, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends that the trial court erred by allowing into evidence a taped confession made by the defendant. Defendant objected to its introduction as lacking a proper foundation for admission into evidence and argues that the record does not reflect a proper chain of evidence.
"A continuous chain of custody is not essential to enable the State to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized...." State v. Vaughn, 431 So.2d 763, 767-68 (La.1983).
In this case, the record reflects that on September 13, 1983, Daryl McCloud, a deputy sheriff for the Vernon Parish Sheriff's Department, tape recorded a statement (confession) made by defendant Randy Smith. After listening to the tape to determine its clarity, Deputy McCloud tagged it, dated it, and marked it with his signature.
He subsequently passed the tape to Thad Bailes and thereafter, did not know what happened to the tape. Deputy McCloud testified at trial that he did not see the tape from the time he released it to Thad Bailes until the day he testified in court. The record reflects that the State failed to establish a continuous chain of custody. Thus, the issue is whether the evidence introduced at trial is more likely than not the original tape made by Deputy McCloud on September 13, 1983.
At trial, Deputy McCloud listened to the tape again and testified that the tape was in the same shape and condition and contained the same information as it did on September 13, 1983. In other words, Deputy McCloud identified the taped statements introduced into evidence as the original taped statements he recorded from the defendant on September 13, 1983.
Deputy McCloud's testimony shows that he could attest to the accuracy of the tape and, although a complete chain of custody was not established, it is more probable than not that the tape recording introduced at trial was the original tape made by Deputy McCloud of the statement given by the defendant. See 431 So.2d at 768. Consequently, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 15
Defendant contends that the trial court erred in that the jury's verdict of guilty of armed robbery was based on insufficient evidence. Defendant argues that the evidence does not clearly establish each and every element of the crime of armed robbery.
In reviewing the sufficiency of evidence in a criminal conviction, the United States Supreme Court, in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) provided the following standard:
"[A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proofdefined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."
Id. at 317, 99 S.Ct. at 2788.
In this case, there exists more than enough competent evidence to find the defendant guilty as charged with armed robbery. In addition to the testimony of the investigating law enforcement officers, the State presented testimony from Mr. Young and Mr. Gilpin, the victims, and from Mr. Doerr, a nonparticipating eyewitness to the armed robbery. Furthermore, the defendant gave a voluntary statement (confession) admitting his participation in the armed robbery. In his confession, the defendant *1355 stated that he took some money from the person of Mr. Gilpin after he and Mr. Blankenship beat the victim with a tire tool and Gilpin's crutch.
The record reflects sufficient evidence, when viewed in a light most favorable to the prosecution, to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt. Consequently, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 16
Defendant contends that the trial court erred in failing to grant a new trial, urging prejudicial error or defect in the proceedings, in that La.Acts 1983, No. 533, sec. 1 created an additional crime of first degree robbery which was not included as a responsive verdict to armed robbery.[5]
The general rule under LSA-C.Cr.P. art. 841 is that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. However, certain rights are so basic that the Louisiana Code of Criminal Procedure provides that they may be raised for the first time on a motion for new trial. LSA-C.Cr.P. art. 841, comment (b) (West 1984).
Under LSA-C.Cr.P. art. 851,
"[t]he Court, on motion of the defendant, shall grant a new trial whenever:
....
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment[.]"
The defendant argues that because of the Legislature's oversight in failing to add first degree robbery as a responsive verdict to LSA-C.Cr.P. art. 814, subd. A(22), he was effectively denied an opportunity to have the jury instructed as to the lesser and included charge of first degree robbery and was deprived of an opportunity to have the jury find him guilty of the lesser offense.
As stated by the Louisiana Supreme Court in State v. Quebedeaux, 424 So.2d 1009, 1013 (La.1982), "[t]he ruling on motion for new trial is committed to the sound discretion of the trial judge and will not be disturbed on appeal unless there is a clear showing of abuse of that discretion."
In the instant case, it is arguable that the defendant could have discovered the omitted responsive verdict of first degree robbery by the exercise of reasonable diligence. Furthermore, it is doubtful that its exclusion from the trial court's charge of responsive verdicts prejudiced the defendant in any manner.
LSA-R.S. 14:64.1 was added by La.Acts 1983, No. 533, sec. 1 and became effective September 1, 1983. The defendant's trial began on January 9, 1984. The defendant had more than a sufficient amount of time to discover the existence of first degree robbery as a responsive charge to armed robbery; and it is more probable than not that had the defendant exercised reasonable diligence he would have discovered the omission in the trial court's jury charge(s).
LSA-C.Cr.P. art. 851(4) also requires the alleged error to be prejudicial. After reviewing the entire record in this case, no argument or testimony was found or introduced into evidence which tended to prove that the defendant committed the robbery while leading the victim to reasonably believe he was armed with a dangerous weapon. La.R.S. 14:64.1. In fact, Mr. Doerr and the victims, Mr. Young and Mr. Gilpin, all testified that the defendant and his accomplice, Mr. Blankenship, were armed with and did use a tire iron and a crutch to commit the robbery. The defendant himself, in a voluntary statement (confession), said that he and Mr. Blankenship beat Mr. Gilpin with both a tire tool and a crutch. In accordance with the evidence presented, the jury returned a unanimous verdict of guilty of armed robbery. The omission of the responsive charge of first degree robbery *1356 was not prejudicial to the defendant in this case and the trial judge did not abuse his discretion by denying the defendant's motion for new trial. Consequently, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 17
Finally, the defendant contends that the trial court erred in failing to grant a new trial based on the prejudicial error of the court in allowing Mr. Mason and Mr. Doerr to testify as to hearsay statements which were prejudicial to the defendant.
In State v. Billiot, 421 So.2d 864, 867 (La.1982), the Louisiana Supreme Court pointed out that in a case where there is overwhelming evidence of the defendant's guilt, the improper admission of an inculpatory statement is harmless error. Based on the law stated in the foregoing assignments of error nos. 6, 7, 8, 9 and 11, we find there was no improper admission of inculpatory statements. However, even if testimony by Mr. Mason and Mr. Doerr was improperly admitted, the overwhelming evidence of defendant's guilt substantiates that the trial judge did not abuse his discretion by failing to grant a new trial. Consequently, this assignment of error has no merit.
AFFIRMED.
GUIDRY, J., concurs.
NOTES
[1] Assignments of error not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255, 1256 n. 1 (La.1982); State v. Crawford, 441 So.2d 813, 815 n. 1 (La.App. 3 Cir.1983).
[2] The record before us contains the entire transcript of the voir dire examinations of Ms. Kinchen, Mr. Matthis, and Ms. Maddox.
[3] Defendant was charged by the Vernon Parish District Attorney under Bill of Information No. 38,289 with aggravated battery in violation of La.R.S. 14:34. Those charges were not tried.
[4] See State v. Gautreaux, 377 So.2d 289, 291 (La.1979), and State v. Billiot, 421 So.2d 864, 867-68 (La.1982), for the proposition that where there is overwhelming evidence of defendant's guilt, the improper admission of an inculpatory statement is harmless error.
[5] Under LSA-R.S. 14:64.1, "First Degree Robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by the use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon."